---

(No. 11998.—Reversed and remanded.)
ZELLA ALLINSON, Appellant, *vs.* MARIA PIERSON *et al.*
Appellees.

*Opinion filed October 21, 1918—Rehearing denied Dec. 4, 1918.*

1. ATTORNEY AND CLIENT—*attorney employed to contest a will must have special authority to compromise suit.* An attorney employed to contest a will does not, in the absence of special authority, have power to accept money to compromise the suit, and his action in accepting the money without the authority, knowledge or ratification of the client is not binding upon her.

2. SAME—*what does not bar complainant from right to continue prosecution of suit.* The fact that the attorney for the complainant in a suit to contest a will, without the authority or knowledge of the complainant, accepts a sum of money from the defendant on a proposition to compromise the suit, which was to be submitted to complainant for acceptance, does not bar the complainant from the right to continue the prosecution of the suit where she never accepted the proposition or received the money, and she is not bound, as a condition to such prosecution, to pay to the defendant the amount which he paid to the attorney, which the latter kept.

3. PRACTICE—*when procedure of dismissing bill on motion and affidavits is erroneous.* Where facts arise after the filing of a bill to contest a will which are relied upon by the defendant as barring the complainant from a further prosecution of the suit they should be set up by plea or answer, and it is error to hear the cause and dismiss the bill upon motion and affidavits without pleadings or issue joined.

4. SAME—*when complainant does not waive right to have cause prosecuted in ordinary manner.* The complainant in a bill to contest a will does not, by resisting the summary dismissal of her bill on motion of the defendant and proceeding to a hearing on the motion, waive her right to insist that the cause be prosecuted according to the ordinary rules of procedure.

5. PLEADING—*the words "attorney of record" do not imply authority to compromise suit.* An allegation that an agreement to compromise a suit to contest a will was entered into by the defendant with the complainant through her "attorney of record" does not imply any authority by the attorney to compromise the subject matter of the litigation.

FARMER and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Greene county; the Hon. E. S. SMITH, Judge, presiding.

DAVID K. TONE, and HENRY M. ASHTON, for appellant.

WHITESIDE & WRIGHT, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Greene county dismissing for want of equity a bill which sought to have reviewed and set aside a previous decree of the same court dismissing a bill to contest the will of Caroline A. Morfoot, a resident of Greene county, who died on December 11, 1908. Her will was admitted to probate on January 18, 1909, and Ornan Pierson, who was named as executor, administered the estate, making final settlement and receiving his discharge from the county court in June, 1910. On September 29, 1915, the bill to contest her will was filed by appellant, Zella Allinson, who was her grand-niece and one of her heirs, together with three other heirs, charging that the will was procured by the undue influence of Ornan Pierson, who was the residuary devisee and legatee. Zella Allinson did not reach the age of eighteen years until October, 1914, but the other complainants were of full age before the settlement of the estate and as to them a demurrer to the bill was sustained. No answer was filed, but at the term to which the summons was returnable, on February 28, 1916, Pierson filed a written motion to dismiss the suit of Zella Allinson, for the reason that on October 28, 1915, she, through her attorney of record, John

C. Wilson, entered into a contract whereby Pierson paid to
her, through her said attorney, the sum of $1500 as a par-
tial payment on the sum of $3500 to be paid to her, in
case she elected to accept it, in full of all her claims, of
every kind and character, in the estate of the deceased, by
which agreement she was to dismiss the suit, it being fur-
ther agreed and understood that in case she did not accept
the sum of $3500 in full of said settlement, then the sum
of $1500 so paid by Pierson to her should be returned to
him; that he paid the $1500, and had ever since been, and
was still, ready and willing to pay the additional sum of
$2000; that she had kept the $1500, and in equity should
either be required to dismiss her suit on the additional pay-
ment of $2000 or return the $1500. In this motion Pier-
son prayed for a rule upon Zella Allinson to elect either
to accept the additional sum of $2000, which was tendered
her, and dismiss her suit, or to return the $1500, and upon
her failure to elect to return the $1500 that the case be dis-
missed. The statements contained in the motion were sworn
to and the following receipt and letter were attached to it
as exhibits:

"Received of Ornan Pierson the sum of fifteen hundred dollars,
to be applied upon the sum of thirty-five hundred dollars to be paid
to Zella Allinson in full of all claims of the said Zella Allinson
against the estate of Caroline A. Morfoot, deceased, and in the
event that said Zella Allinson elects not to accept said sum of
thirty-five hundred dollars and to release and discharge all claims
against said estate, the said sum of fifteen hundred ($1500) dol-
lars is to be returned to said Ornan Pierson.

Carrollton, Ill., Oct. 28, 1915.          JOHN C. WILSON,
                               *Attorney for Zella Allinson."*

"CARROLLTON, ILL., *February 15, 1916.*
*"Mr. John C. Wilson, Att'y at Law, Chicago, Ills.:*

"MY DEAR SIR—The next term of the circuit court of Greene
county will convene on the 28th of this month. I will expect you
to be here in person at that time, when you will dismiss the suit
brought against me or refund to me the sum of fifteen hundred
dollars which I paid you.

"Very truly yours,          ORNAN PIERSON."

On March 11, 1916, the court made an order reciting the appearance of Zella Allinson by John C. Wilson, her solicitor, and of Ornan Pierson by F. A. Whiteside, his solicitor, ruling her to elect by nine o'clock in the morning of March 16 whether she would accept the additional sum of $2000 and dismiss the suit or return the $1500, and if she elected to proceed with the suit, requiring her to return the $1500 by nine o'clock in the morning of March 16. On March 16 this time was extended to March 21, when a motion made on behalf of the complainant to set aside the order of March 11 was denied, and on March 22 the court entered an order finding that Pierson had deposited the sum of $2000 with the clerk and dismissing the suit for non-compliance by the complainant with the rule. A certificate of all the evidence taken on the hearing of the motion was filed, showing that it was heard upon the motion, verified by the defendant's affidavit, together with the two exhibits; an affidavit of John C. Wilson, the complainant's solicitor; another affidavit, and the testimony of one other person, which have no material bearing on the case.

The bill to review the decree sets forth a copy of the record, and further alleges that John C. Wilson was one of the complainant's solicitors when the decree was entered but had not been authorized to compromise or settle her claims against the estate of the deceased for $3500 or any other sum, and that she never had any knowledge or information that he had received $1500 until she learned it shortly before filing her bill of review; that shortly after October 28, 1915, she was informed by her attorney, Wilson, that the case would be tried at the February term, 1916, and after the February term that it had been put over to the September term; that during the months of November and December, 1916, she was temporarily residing at Seattle, Washington, and she received there a letter from a banker in New York City stating that a Mr. Whiteside, of Carrollton, Illinois, wanted her address; that she wrote

to Whiteside and received a letter from him asking her to write to the clerk of the circuit court of Greene county, and stating that some money was on deposit with said clerk for her; that she wrote to the clerk in December, 1916, and received a reply from him informing her of the various proceedings in her suit and that the sum of $2000 was deposited with him by Pierson, which she could get on giving her receipt; that she replied that she would not take the $2000; that on February 6, 1917, her sister, May Allinson, visited Chicago and interviewed first Henry M. Ashton, who was associated with Wilson in filing the bill, and learned from him that he had no knowledge of the deposit of $2000 with the clerk or the payment of $1500 to Wilson; that the sister then interviewed Wilson, and he for the first time informed her and Ashton concerning the above proceedings. The bill, which was filed on February 27, 1917, further alleges that the complainant has never received said sum of $1500 or any part of it and has not ratified any of the acts of Wilson with reference to the alleged settlement and does not desire to release her claim against the estate of the deceased for the sum of $3500, but does desire that her contest of the validity of the instrument alleged to be the will of Caroline A. Morfoot be determined by the courts.

Pierson demurred to a part of the bill of review and the demurrer was overruled. To another part he filed an answer, admitting the allegations of the bill as to the filing of the original bill on September 29, 1915, the entry of the various orders, resulting in the decree of March 22, 1916, and the certificate of evidence, and denying that he had any knowledge of or was a party to any fraudulent purpose on the part of John C. Wilson to prevent the complainant from maintaining and prosecuting her bill.

On the hearing Zella Allinson testified she had never met Wilson, and introduced the following instrument under which he acted as her solicitor, which she signed and delivered to John M. Cameron, at Brookline, Massachusetts:

*"Sept. 2, 1915.*

"I, Zella Allinson, of 205 Rawson road, Brookline, Mass., do hereby appoint John C. Wilson and John M. Cameron, of Chicago, Illinois, my attorneys to commence, prosecute· and complete proceedings to set aside the will of the late Caroline Morfoot and to collect my share of the estate of said Caroline Morfoot, and I authorize them to make settlement of any such proceedings. Out of the proceedings resulting to me after payment of costs and cash outlays, one-half of the remaining sum shall be retained by said attorneys in payment for their services and the remaining one-half shall be paid to me or to my order.

· "Witness my hand and seal at Brookline, Mass., this 2d day of September, 1915.          ZELLA ALLINSON. (Seal) "Witness: Olive Allinson."

Miss Allinson testified that she had never met Wilson, and that she had not received the $1500 or any part of it and had no knowledge of its payment or of any of the proceedings in the suit to contest the will until the receipt of the letter from the clerk. All of Wilson's correspondence, continuing until December 2, 1916, was introduced in evidence, but it contained no mention of the transaction in question. Wilson did not testify. Pierson testified to the payment of the $1500 to Wilson and to his own good faith in the transaction and ignorance of any lack of authority or wrongful purpose on the part of Wilson. Since the decree Pierson has died, and Maria Pierson, executrix and sole beneficiary under his will, was substituted as appellee.

The court was without authority to enter the rule requiring the complainant to elect whether or not to accept the proposition for a settlement and in case of her election not to accept, to return the $1500, and to dismiss her suit for a failure to comply with the rule. The facts stated in the defendant's motion were, in substance, that after the filing of the bill the defendant made a proposition for a settlement of the suit for $3500 to the complainant's solicitor, to be submitted to the complainant for her acceptance or rejection, and at the same time paid the solicitor $1500, which the solicitor agreed to return if the proposition was not accepted. There is neither averment nor presumption

that the attorney had any authority to compromise the case
or accept the money for his client. An attorney is author-
ized to receive his client's money when he is employed for
that purpose and does so by virtue of his retainer. (*Ruck-
man* v. *Alwood*, 44 Ill. 183.) Wilson's employment was not
to collect money but to set aside the will, and without spe-
cial authority he was without power to accept money in
compromise of the suit. Pierson was presumed to know
Wilson's lack of authority and that the payment to him
was not payment to his client. It is not claimed that any
compromise of the suit was actually made, but only that
a proposition was submitted, accompanied by a tender of
cash. The complainant had a right, when the proposition
was actually brought to her knowledge, to refuse it, and was
not bound by the payment of money to a person not au-
thorized to receive it for her. The motion sought to com-
pel her to ratify the unauthorized payment of $1500 to
her solicitor, though she never received the money and was
ignorant of its payment, or to reimburse the defendant, as
a condition of prosecuting her suit. She was not bound to
make any such election. As soon as she learned of the
transaction she repudiated it and filed her bill for a review
of the decree.

The procedure of hearing the cause and dismissing the
bill upon motion and affidavits, without pleading or issue
joined, was erroneous. The facts involved in the motion
arose after the filing of the bill, but they could have been
stated in a plea or answer, and if the defendant desired
the judgment of the court as to whether they constituted
a bar to the further prosecution of the suit they should
have been so stated. The case resembles somewhat that of
*Ferris* v. *McClure,* 36 Ill. 77, though in that case the de-
fense of a release arose after issue joined, a reference to a
master and a report by the master. The defendants made
a motion to dismiss, founded upon a written agreement of
the complainant to dismiss at the defendants' costs in con-

sideration of $500 paid and a full settlement of all accounts. The complainant made a cross-motion to set aside the agreement because it was obtained by misrepresentation and the concealment of material facts. Affidavits were read, the cross-motion was denied and the bill was dismissed. The decree was reversed, the court saying: "After a cause is at issue, if any matter of defense arises, the only mode in which a defendant can avail himself of it is by cross-bill. (Story's Eq. Pl. sec. 392.) The defendant should have filed a cross-bill setting forth the release and obtained a rule on the complainant for answer thereto. The complainant would then have had an opportunity to deny the execution of the release or to admit it and set up matters in avoidance. A replication to such answer would have put the validity of the release in issue. Such proofs as the parties desired to introduce in regard to it should have been made in the usual manner. The court below improperly undertook to hear and determine the case upon the validity of the release, without pleadings and upon evidence taken in a manner not allowing of the cross-examination of the witnesses."

Counsel for the appellee refer to the cases of *Coultas* v. *Green,* 43 Ill. 277, and *Toupin* v. *Gargnier,* 12 id. 79, as authority for the court, on motion, to enforce an agreement to dismiss a suit. In the former case the parties entered into a written stipulation filed in the cause for the entry of a decree, and the court held that upon the filing of the stipulation the complainant lost further control of the cause, denied his motion to dismiss and entered the stipulated decree. The latter case was an action at law which the plaintiff expressly agreed to dismiss. He did not deny the agreement, and the court dismissed the cause on the defendants' motion. Here it was not claimed that there was an agreement to dismiss, a release or a compromise, but that certain events had occurred which should bar the complainant from further prosecuting her suit. The cases cited are not applicable to such a situation.

It is urged on behalf of the appellee that upon a bill of review only the record itself can be investigated; that the court cannot inquire into the evidence upon which the decree is based but is bound by the facts found in the decree, and that the court found that the appellant entered into the agreement with Pierson. The finding of the court must, of course, be based upon and correspond with the allegation, and it does. That allegation is that Pierson entered into an agreement with Zella Allinson through her attorney of record, and the agreement itself is attached to the motion. The finding of the court is in the same language. The words "attorney of record" do not imply authority to make an agreement compromising the subject matter of the litigation, and there is neither allegation nor finding of such authority. There is a finding of payment to John C. Wilson as attorney for Zella Allinson, but no finding of payment to her or to anyone authorized to receive payment for her.

It is further insisted that the appellant, having proceeded to a hearing of the motion, waived the right to insist upon any other mode of arriving at the issue. The defendant having made the motion to dismiss her suit she resisted it, insisting that it should not be allowed. She did not by resisting the summary dismissal of her bill waive the right to prosecute her cause according to the ordinary rules of procedure.

It is also argued that it appears from the evidence that appellant could not, in any event, have succeeded in her contest of the will, and that if she did succeed the amount of the estate she would receive would be much less than the amount offered by the appellee. These questions, however, have nothing to do with the question whether the court erred in dismissing her bill, which is the only question presented by this record.

The decree will be reversed and the cause remanded.

*Reversed and remanded.*

FARMER and COOKE, JJ., dissenting.